UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
     v.                            )    Cr. No. 09-013 S
                                   )
ROBERT MAJOR.                      )
_____)

## SENTENCING MEMORANDUM

WILLIAM E. SMITH, United States District Judge.

### I.

On November 3, 2008, Defendant Robert Major ("Major") entered Sovereign Bank in Pawtucket, Rhode Island, and put a note in front of the teller which read, "I have a gun, I don't want to hurt anyone so give me all your $20 bills." Major left his hand in his pocket, and the teller believed that he might have a weapon. The teller then bent down, pressed the bank alarm, and crawled along the floor to her supervisor. Defendant fled the scene without any money. He was later arrested and eventually pled guilty to one count of bank robbery, in violation of Title 18 U.S.C. § 2113(a), a Class C felony.

At the sentencing hearing, the Court heard from the parties on Defendant's objection to the presentence report, which classified Major as a career offender, based in part upon his prior conviction under R.I. Gen. Laws § 11-8-3. As a career offender, the sentencing guideline range for Major would be 151

months to 188 months; however, without the career offender designation, the range would be 70 months to 87 months. "The Guidelines, while now advisory and not mandatory, remain the starting point for a district court's sentencing decision. . . . Although the sentencing judge now has considerable leeway to vary from the Guidelines range, the sentencing judge must still consider the extent of deviation between the Guidelines range and the sentence given and ensure the justification is sufficiently compelling to support the degree of variance." United States v. Giggey, 551 F.3d 27, 29 (1st Cir. 2008) (internal citations omitted). All parties agree, however, that regardless of Major's technical designation, this Court may consider a defendant's actual prior criminal conduct when fashioning a fair and appropriate sentence. See Taylor v. United States, 495 U.S. 575, 601, 602 n.10 (1990).

After hearing argument regarding Major's career offender status, this Court took that issue under advisement,[1] and then proceeded, upon consideration of the § 3553 factors, to impose a sentence of 100 months upon Defendant, concluding that a sentence of 100 months was appropriate in light of Defendant's

---

[1] Major has four violent felony convictions for crimes committed in 1998; however, Major was arrested and pled guilty to three of those crimes at the same time, thus the Guidelines count them as a single offense. The crimes include a robbery of a Rojacks, an assault with intent to rob, and robbery of a Shaw's.

2

past. A judgment was subsequently entered stating the same. As noted by the Court at the sentencing hearing, if Defendant's objection to the presentence report was sustained, the Court would vary upward from the maximum recommended guideline sentence (87 months) to 100 months, based upon Major's substantial prior record and past conduct. By the same token, if deemed a career offender, the Court concluded that 151 months was more than what was necessary to accomplish all the goals of § 3553 and a departure downward to 100 months would be appropriate. The Court writes now, as promised, to explain its resolution of the Defendant's objection to his designation as a career offender.

Major objects to career-offender status arguing that the Rhode Island statute does not constitute a Crime of Violence ("COV") and, therefore, does not entitle him to a sentencing enhancement in accordance with 18 U.S.C. § 924(e). Defendant's primary argument is that a categorical analysis of R.I. Gen. Laws § 11-8-3 confirms that his conviction under the statute should not qualify as a COV. The Government contends that even if the statute is broader in scope than a generic burglary statute, it does not matter because Defendant pled to all the elements of generic burglary, as evidenced in the plea colloquy. Defendant disputes whether this Court may rely upon the plea colloquy when conducting a categorical analysis.

3

For the reasons set forth below, the Court agrees that § 11-8-3 is indeed broader in scope than a generic burglary statute; however, this is of no avail to Major because he admitted to the facts of generic burglary during the plea colloquy and it is appropriate for the Court to consider this fact in determining whether the crime qualifies for purposes of career offender designation.

**II.**

The issue for determination is whether Major qualifies as a career offender. "To be a career offender: (1) the defendant must be 'at least eighteen years old at the time the defendant committed the instant offense of conviction'; (2) the defendant's instant offense must be 'a felony that is either a crime of violence or a controlled substance offense'; and (3) the defendant must have 'at least two prior felony convictions of either a crime of violence or a controlled substance offense.'" Giggey, 551 F.3d at 32 (quoting U.S.S.G. § 4B1.1(a)). A COV is further defined in Guideline § 4B1.2 as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a

4

>    serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

The First Circuit nicely summed up the different definitions of COV in Giggey.

>    From the text of § 4B1.2, there are three ways that an offense can constitute a "crime of violence." First, the crime can be one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Second, it can be one of the four enumerated offenses in § 4B1.2(a)(2). Third, the offense can be, under the residual clause, one that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

Giggey, 551 F.3d at 33.

The second and third definitions are relevant here. Indeed, burglary of a dwelling is a clearly enumerated COV in § 4B1.2(a)(2). In Taylor, the United States Supreme Court stated that "the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."[2] Taylor, 495 U.S. at 598 (citing W.

---

[2] The Supreme Court in Taylor was interpreting Congressional intent in the context of a Section 924 (e) enhancement for "burglary," which is broader than the Sentencing Commission's "burglary of a dwelling" language in the Guidelines (because it includes buildings and structures, not just dwellings). This definition is still helpful though because as the First Circuit has stated "Taylor did not go farther and mandate the Commission to define burglary similarly for Guideline purposes . . . and the Commission is obviously cognizant of the difference." Giggey, 551 F.3d at 36.

5

LaFave & A. Scott, Substantive Criminal Law, n.3, §8.13(a) (1986)). The Court noted that "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the[se] basic elements[.]" Id. at 599. The Taylor Court recognized "the problem of applying this conclusion to cases in which the state statute under which a defendant is convicted varies from the generic definition of 'burglary.'" Id. There the government argued that the defendant committed a crime of violence because it was an enumerated felony, i.e. burglary. The Court noted that even if this did not meet the definition of burglary, it could still be a crime of violence because "the Government remains free to argue that any offense" is a crime of violence under the residual clause. Id. at 600 n.9.[3]

Defendant argues that a violation of the Rhode Island statute does not constitute a COV because the statute includes entering during the daytime, no required element of "breaking," and includes entering nonresidential buildings and non-structures. During argument, Defendant also contended that the

---

[3] Indeed, this is precisely what occurred in Giggey. The defendant was convicted under a state burglary statute that was not limited to buildings; the Court reversed and remanded to the district court to apply a categorical approach to determine if the nonresidential burglary convictions constituted a COV under the residual clause.

6

statute did not require an unlawful entry.  On a procedural level, Defendant argues that the categorical approach for determining what constitutes a COV outlined in Taylor and Giggey, limits the Court to analysis of the language of the statute only.[4]

Before reaching the issue of whether this Court may rely upon the plea colloquy to consider if Major committed a COV, the Court will first determine whether the statute is broader than generic burglary, as defined in Taylor, and "burglary of a dwelling" as provided in the guidelines.

**III.**

**Section 11-8-3**

R.I. Gen. Laws § 11-8-3 provides:

Every person who, with intent to commit murder, sexual assault, robbery, arson or larceny, shall enter any dwelling house or apartment at any time of the day or night, or who with such intent shall, during the daytime, enter any other building, or ship or vessel, shall be imprisoned not more than ten (10) years, or be fined not more than five hundred dollars ($500), or both.

As Defendant notes, the statute encompasses entry into "any other building, or ship or vessel[.]"  R.I. Gen. Laws § 11-8-3. The statute also does not require breaking, and entry may occur during the daytime.  The last two points are easily dismissed

---

[4] Defendant does not dispute that the facts admitted by Major during the plea colloquy support that he was convicted of unprivileged entry of a dwelling with intent to commit larceny.

7

because neither breaking nor nighttime entries are part of the definition of generic burglary, and therefore, they are not part of the definition under the guidelines.  See Taylor, 495 U.S. at 598.  In essence, how and at what time entry is accomplished, is irrelevant to the analysis.

During hearing, Defendant also argued that breaking is the sin qua non to an unlawful entry and, therefore, the statute here does not require unlawful entry.  If true, the statute would not satisfy the generic burglary definition,[5] which requires either "unlawful or unprivileged entry."  Taylor, 495 U.S. at 598.  Defendant's reading is far too stingy, however.  The statute focuses on the intent of the defendant at the time of entry.

Generic burglary requires either that the entry is unlawful or unprivileged.  Taylor, 495 U.S. at 598.  The Rhode Island Supreme Court had an opportunity to consider the unlawful entry element, when a defendant challenged the constitutionality of § 11-8-3 on the ground "that it should not be a crime to merely have criminal thoughts and then enter a building."  State v.

---

[5] As mentioned above, the residual clause could have been applied.  As recently discussed in Begay v. United States, the residual clause hinges on how similar the crime is to those actually enumerated in the statute. Begay v. United States, 553 U.S. 137 (2008).

Perry, 372 A.2d 75, 79 (R.I. 1977).[6] The Court reasoned that "while entry into a building may not of itself be criminal, it is an overt act in furtherance of a criminal intent. . . . [I]ts occurrence in conjunction with the criminal intent is what makes it a crime. An otherwise lawful act, not criminal of itself, may become criminal when performed with the appropriate state of mind or criminal intent." Perry, 372 A.2d at 80 (citing State v. D'Amico, 293 A.2d 304 (1972)).

Here, the R.I. statute requires an entry with the intent to commit a crime, which is unlawful entry consistent with the elements of generic burglary provided in Taylor. However, the statute does include entry into ships, vessels and nonresidential buildings. These are outside the scope of the guideline definition but within the statutory definition. For that reason, the statutory language is broader, a situation specifically mentioned in Taylor, 495 U.S. at 600. Because the statute is broader, the Court is left to wrestle with whether this case falls into that "narrow range of cases" that allow the

---

[6] Since generic burglary requires either unlawful entry or unprivileged entry, and the Rhode Island Supreme Court confirmed in Perry that entry into a building with the requisite intent is unlawful, this Court is unconvinced that it needs to enter into the foray of arguing semantics as to whether unlawful entry, which is clearly part of § 11-8-3, is the same as unprivileged entry. Cf. United States v. Bowden, 975 F.2d 1080 (4th Cir. 1992) (entering a building with the intent to commit larceny is per se unprivileged entry) with United States v. Maness, 23 F.3d 1006 (6th Cir. 1994) (entering a building with the intent to commit larceny is not per se unprivileged entry).

Court to turn to other documents to determine whether Major committed a COV.  Shepard v. United States, 544 U.S. 13, 17 (2005).  The Court concludes that it does.

**The Plea Colloquy**

It is certainly possible for a defendant to be convicted under § 11-8-3 and yet not have committed a COV as described in the guideline definition.[7]  But that is not the case for this Defendant.  Defendant seizes upon language from the Supreme Court applying a categorical analysis, except "in a narrow range of cases."  Shepard, 544 U.S. at 17.

> The Courts of Appeals uniformly have held that § 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.  (Citations omitted)  We find the reasoning of these cases persuasive.

Taylor, 495 U.S. at 600.  While stating on one hand that "particular facts underlying" were not to be considered, the Court provided that "[t]his categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary."  Id. at

---

[7] For example, suppose a defendant entered a ship with the permission of the owner and harbored the intent to steal cargo; but, once inside, he changed his mind and left without stealing anything.  Such a defendant could plead to just these facts, be convicted of violating R.I. Gen Laws § 11-8-3, but not necessarily have committed a COV for purposes of the guidelines.

10

602. Defendant contends this case does not fit into that narrow range.

Further discussion of Giggey is helpful here. As mentioned above, in Giggey the First Circuit considered whether a Maine statutory conviction for a non-residential burglary constituted a COV under the residual clause of the guidelines. Reversing its prior position, articulated in United States v. Fiore, 983 F.2d 1 (1st Cir. 1992), that a non-dwelling burglary is per se a COV, the Court held that such a conviction was not per se a COV and "the Commission chose not to equate all burglaries with crimes of violence." Giggey, 551 F.3d at 35. The Court elaborated that when considering "states with burglary statutes that provide a broader definition of burglary and states with statutes not labeled as burglary statutes," the Supreme Court precedent applies a categorical approach with a particular "procedural aspect," which permits the Court to consider a restricted list of other documents. Id. at 40 (internal citations omitted). As discussed above, this is the situation at hand. In particular, footnote 8 provides:

> For guilty pleas, the federal sentencing court may review the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."

Id. at 40 n.8 (citing Shepard, 544 U.S. at 16). Clearly, this is precisely the situation here: the Court can best accomplish

11

the task of determining whether Major committed a COV, and therefore should be classified a career offender, by reviewing the transcript of the plea colloquy.

During Major's plea colloquy (in which he pleaded nolo contendre) the following transpired:

| | |
|---|---|
| Ms. Kelly: | As to KC/98-0530A the state would have proven beyond a reasonable doubt that on the 12th of February 1998 in the City of Warwick, Robert Major did enter in the dwelling house of Mark Giannini with intent to commit larceny and without the consent of Mr. Giannini. |
| The Court: | Do you understand those facts? |
| Mr. Major: | Yes. |
| The Court: | Do you agree and admit had the matter gone to trial those facts would have been proven beyond a reasonable doubt? |
| Mr. Major: | Yes. |

Transcript pp. 16-17, Sept. 23, 1999.

The transcript indicates that Major admitted his entry into the victim's dwelling was unprivileged.  Therefore, it is without question that Defendant admitted on the record, facts that support he committed a "burglary of a dwelling" as defined by the guidelines.  Although Defendant's technical argument has some merit, in that the statute itself is broader than the burglary envisioned by the Commission and Congress as a COV, it will have to be another defendant, on another day, who may avoid the career-offender status as a result.  Major, however, is

unable to avoid the reality that he committed a COV and is properly classified a career offender.

**IV.**

Conclusion

    For the reasons stated herein and during hearing, Defendant Robert Major is hereby sentenced to 100 months and Defendant's Objection to the Presentence report is DENIED.

IT IS SO ORDERED,

ENTER:


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  March 16, 2010